Newman, Circuit Judge, dissenting.
A wakeboard is not a complicated device, but its enjoyment in water sports has long challenged weak and inexperienced *1376 riders attempting to stand up on a fast-moving board while bouncing on wake.[1] Sportsman Glen Duff knew the problem and, after four years of experimentation, he devised a wakeboard that facilitated usage regardless of a rider's strength or athleticism. He obtained U.S. Patent No. 8,292,681 ("the '681 Patent"), assigned to ZUP, LLC. Mr. Duff exhibited his "ZUP Board" at the Surf Expo, a trade show for the water sports industry. Thereafter ZUP and Keith Parten, President and CEO of Nash Manufacturing, Inc. ("Nash"), a leading producer of water sports equipment including wakeboards, discussed a possible commercial arrangement. Parten told Duff: "You have a great product by the way!" Maj. Op. at 1374. However, commercial discussions broke down, and soon thereafter Nash introduced a similar wakeboard, the "Versa Board," the product that is charged with infringement.
The district court granted summary judgment of patent invalidity, and alternatively summary judgment of non-infringement. There was no trial. My colleagues affirm the judgment of invalidity, and do not reach infringement. These rulings, however, were rendered on incorrect application of the law of obviousness and without regard to the principles of summary judgment.
I respectfully dissent.
DISCUSSION
ZUP's U.S. Patent No. 8,292,681
The '681 Patent, in its Abstract, describes the ZUP Board as
having advantages such as improved stability, maneuverability and ease of use. Embodiments of the contemplated water recreation device include a riding board, handles and a tow hook assembly that are configured to allow a rider to more easily transition to a standing forward-facing position while riding the device. The contemplated device may also include foot bindings or foot grips for added ride stability.
'681 Patent, Abstract. Patent Figures 1A and 1C describe this new wakeboard's top and underside:
*1377 ?
Patent Figures 9A-H illustrate the method of use of the wakeboard; showing the handles, foot grips, and tow hook, whereby the rider rises from a prone to a standing position with the assistance of these elements:
?
*1378 ?
Claims 1 and 9 are representative, with claim 1 directed to the wakeboard's structure and claim 9 to the method of use. Claim 1 recites:
1. A water recreation device comprising:
a riding board having a top surface, a bottom surface, a front section, a middle section, and a rear section;
a tow hook disposed on the front section of the riding board;
first and second handles disposed side-by-side on the front section of the top surface of the riding board aft of the tow hook;
first and second foot bindings disposed side-by-side on the middle section of the top surface of the riding board aft of the first and second handles; and
a plurality of rails protruding from the bottom surface of the riding board and extending substantially the full length of the riding board;
wherein the tow hook includes a rearward-facing concave section sized to receive a tow rope bar and positioned to allow the riding board to be pulled in a forward direction by a tow rope attached to the tow rope bar, *1379 wherein the first and second handles and the first and second foot bindings are configured for simultaneous engagement by a rider to position the rider in a crouching stance facing in a forward direction,
wherein the plurality of rails are disposed relative to a longitudinal axis along the bottom surface of the riding board, the longitudinal axis projecting rearwardly from a reference location substantially central to the front section, and each of the plurality of rails is laterally spaced closer to the longitudinal axis nearest the rear section of the riding board than the each of the plurality of rails is laterally spaced from the longitudinal axis nearest the front section of the riding board thereby allowing the water that moves across the bottom surface nearest the front section of the riding board to funnel towards the bottom surface nearest the rear section of the riding board for the purpose of generating lift force against the bottom surface of the riding board.
The parties, the district court, and my colleagues all agree that the structure and the placement of handles and foot bindings is novel. However, the district court and my colleagues hold that because some prior art wakeboards have handles and some have foot supports, nothing more is needed for summary judgment of obviousness. The district court stated:
It is evident to the Court that Duff identified known elements in the prior art that aided in rider stability while engaging a water recreational device and simply combined them in one apparatus and method. The elements in Claim 1 and 9 are used for the exact same purpose as they were in the prior art and, as expected, lead to the anticipated success of assisting riders in reaching a standing position.
ZUP, LLC v. Nash Mfg., Inc. , 229 F.Supp.3d 430, 447 (E.D. Va. 2017) (" Dist. Ct. Op."). However, only Duff achieved the district court's "anticipated success." The criteria for summary judgment of obviousness are not met, as I next discuss:
The district court's judgment
Summary judgment of patent invalidity requires that all reasonable factual allegations are resolved in favor of the non-movant, Teleflex, Inc. v. Ficosa N. Am. Corp. , 299 F.3d 1313, 1323 (Fed. Cir. 2002) (citing Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ), and that when so resolved, there is clear and convincing evidence that the patented invention would have been obvious to a person of ordinary skill. Microsoft Corp. v. i4i Ltd. P'ship , 564 U.S. 91, 95, 131 S.Ct. 2238, 180 L.Ed.2d 131 (2011). The district court strayed from these long-recognized rules.
Although the prior art is close, the novelty of the '681 Patent 's wakeboard is not disputed. On the issue of obviousness, my colleagues apply an incorrect analysis of the standard factual considerations, as set forth in Graham v. John Deere Co. , 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). The four Graham factors are: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the field of the invention; and (4) objective considerations of obviousness. Id. at 17-18, 86 S.Ct. 684 ; see also KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 399, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007) (reaffirming the four Graham factors).
*1380 My colleagues hold that only three of the four Graham factors are considered in order to establish a prima facie case of obviousness, and that the fourth Graham factor is applied only in rebuttal, whereby the fourth factor must be of sufficient weight to outweigh and thereby rebut the first three factors. Maj. Op. at 1375. However, as stated in Apple Inc. v. Samsung Electronics Co., 839 F.3d 1034, 1048 (Fed. Cir. 2016) (en banc), "determination of whether a patent claim is invalid as obvious under § 103 requires consideration of all four Graham factors, and it is error to reach a conclusion of obviousness until all those factors are considered." The Court in Graham explored the interaction among the four factors, and explained how each may affect judicial understanding of the others. The Court recognized that the fourth factor, the objective indicia, are "more susceptible of judicial treatment than are the highly technical facts often present in patent litigation," and that such indicia "may lend a helping hand to the judiciary." Graham , 383 U.S. at 35-36, 86 S.Ct. 684. In Stratoflex, Inc. v. Aeroquip Corp. , 713 F.2d 1530, 1539 (Fed. Cir. 1983), this court observed that the "so-called secondary considerations ... may often be the most probative and cogent evidence in the record," for they place the invention in the context in which it arose, and aid judges in understanding obviousness of the invention as perceived by persons in the relevant field.
A ruling of invalidity on the ground of obviousness requires more than that the claim elements were previously known. As the Court instructs in KSR:
[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art. Although common sense directs one to look with care at a patent application that claims as innovation the combination of two known devices according to their established functions, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does.
Id . at 418-19, 127 S.Ct. 1727. However, my colleagues apply the flawed reasoning against which KSR warned, and hold that the concededly novel ZUP Board would have been "prima facie obvious"[2] because it uses known components; my colleagues relegate to rebuttal the evidence of long-felt need, failure of others, copying, and commercial success, and conclude that "[t]he weak evidence of secondary considerations presented here simply cannot overcome the strong showing of obviousness." Maj. Op. at 1375.
The requirement that the secondary considerations "overcome" the conclusion based on the first three factors is incorrect, for the obviousness determination *1381 must be based on the invention as a whole including the evidence of all four Graham factors. It is incorrect to convert the fourth Graham factor into "rebuttal," requiring it to outweigh the other three factors. Consideration of the objective indicia "is not just a cumulative or confirmatory part of the obviousness calculus, but constitutes independent evidence of nonobviousness." Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc. , 520 F.3d 1358, 1365 (Fed. Cir. 2008). This evidence must be considered together with the other evidence, and not separated out and required to outweigh or rebut the other factors. All of the factors must be considered in connection with proving invalidity by clear and convincing evidence. Apple Inc. v. Samsung Elecs. Co. , 839 F.3d 1034, 1048 (Fed. Cir. 2016) (en banc).
The fourth Graham factor is of particular analytic value in guarding against judicial hindsight. The majority's decision is a textbook example of hindsight, where the inventor's teaching is used as a template to render the invention obvious. Precedent warns against this fallacy, see, e.g., KSR , 550 U.S. at 421, 127 S.Ct. 1727 ("A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon ex post reasoning."); Polaris Industries, Inc. v. Arctic Cat, Inc. , 882 F.3d 1056, 1068 (Fed. Cir. 2018) ("We have observed that the prejudice of hindsight bias often overlooks that the genius of invention is often a combination of known elements which in hindsight seems preordained.") (internal quotation marks omitted); In re Ethicon , 844 F.3d 1344, 1355-56 (Fed. Cir. 2017) (the " 'insidious' exercise of decisional hindsight, whereby that which the inventor taught is used by the decision-maker to reconstruct the invention."); Iron Grip Barbell Co. v. USA Sports, Inc. , 392 F.3d 1317, 1320 (Fed. Cir. 2004) ("[W]e are mindful of the repeated warnings of the Supreme Court and this court as to the danger of hindsight bias."). The district court and the panel majority do not identify any suggestion in the prior art to make the specific wakeboard modifications made by Duff-the only source of these modifications is judicial hindsight.
My colleagues also err in their analysis of the objective indicia. For example, the panel majority concedes that Nash obtained the patented wakeboard and used it to develop a wakeboard that "resembled the claimed invention." Maj. Op. at 1375. Yet the panel majority holds that because ZUP did not give Nash a "blueprint" of the ZUP Board, the evidence of copying is somehow diminished. Id . at 1375. No precedent, no logic, requires a "blueprint" in order to copy a simple structure in plain view and possessed by the accused infringer.
The district court also misapplied the factor of long-felt need. The court reasoned that since improvement in wakeboards was known to be desirable, this sufficed to provide the motivation to make the improvement achieved by Duff. Dist. Ct. Op. at 447. Motivation to solve a known problem is not motivation to make a specific solution, as the district court erroneously equated:
Additionally, the Court finds that one of ordinary skill in the art would have been motivated in 2008 to combine these elements in order to aid in rider stability, to allow a wide variety of users to enjoy the device, and to aid users in maneuvering between positions on a water board. These motivations are a driving force throughout the prior art and have been shared by many inventors in the *1382 water recreational device industry. And the specific desire to aid users in maneuvering between positions on a water board has been a consistent motivation in the prior art for decades.
Dist. Ct. Op. at 447 (internal citations omitted). The panel majority adopts this reasoning, although neither my colleagues nor the district court find that Duff's novel combination was suggested in the prior art as the path to long-sought improvement. To the contrary, Duff's realignment of known elements in a crowded field, achieving benefits not previously achieved, weighs against obviousness.
The sport of wakeboarding has long challenged inexperienced and weak riders. The prior art has long sought improvement, yet no one presented the specific structure created by Duff. And I repeat the words of Nash's CEO, himself an inventor of water sports products, that "you have a great product by the way!"
On the proper analysis, summary judgment of obviousness was improperly granted. See Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 373, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) ("The basic purpose of the Federal Rules is to administer justice through fair trials, not through summary dismissals as necessary as they may be on occasion."). On consideration of all of the Graham factors, applied to the invention as a whole, clear and convincing evidence of obviousness was not presented. From my colleagues' contrary ruling, I respectfully dissent.

A wakeboard is "a short board with foot bindings on which a rider is towed by a motorboat across its wake and especially up off the crest for aerial maneuvers." Merriam-Webster dictionary online.

Black's Law Dictionary (10th ed. 2014) defines "prima facie obviousness" as:
A procedural tool used in the examination of U.S. patent applications in which the patent examiner must make an initial showing of obviousness before the applicant must produce evidence of nonobviousness. The patent examiner bears the initial burden of establishing obviousness. A prima facie case of obviousness is established when the examiner articulates nonconclusory, explicit reasons for obviousness that are rationally supported by the factual record.
The concept of prima facie obviousness based solely on prior art is a procedural tool of ex parte examination. See In re Piasecki , 745 F.2d 1468, 1471-72 (Fed. Cir. 1984) ("The concept of prima facie obviousness in ex parte patent examination is but a procedural mechanism to allocate in an orderly way the burdens of going forward and of persuasion as between the examiner and the applicant.").